# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 7, 2003 Session

## STATE OF TENNESSEE v. HOWARD COLEMAN

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 98-00052, 98-00053       Chris Craft, Judge**

---

**No. W2002-01485-CCA-R3-CD  - Filed January 12, 2004**

---

The defendant appeals his convictions for first degree murder and especially aggravated robbery on the grounds of the insufficiency of the evidence to support the convictions. We conclude that the evidence abundantly supported the convictions and affirm the same.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Juni S. Ganguli (on appeal), and Coleman W. Garrett and Kevin Reed (at trial), Memphis, Tennessee, for the appellant, Howard Coleman.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience R. Branham and Dan Woody, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Howard Coleman, the defendant, appeals his convictions for first degree murder and especially aggravated robbery. The defendant was indicted with three co-defendants for premeditated murder, felony murder, and especially aggravated robbery. A jury convicted the defendant on all charges. The premeditated and felony murder convictions were merged into one conviction for first degree murder. The defendant's sentence was set by the jury for first degree murder as life without parole. The trial judge imposed a sentence of twenty years for the especially aggravated robbery, concurrent with the sentence for murder. The defendant's sole issue on appeal is that the evidence was insufficient to support the convictions.

Addie Mae Henderson was the aunt of the victim, Victor Henderson. She testified that she had "mostly raised [the victim]." The victim had just been paid and had about $600 with him when

he left her house about 4:00 p.m. on July 12, 1997. The victim left on a borrowed bicycle, and the next time she saw him was later that day at the crime scene, where she identified his body. She stated that the defendant had been a friend of the victim's. They had played basketball together, and the defendant had spent the night at her house in the past.

Lewis B. Pittman was the victim's father and also employed the victim as a carpenter in Mr. Pittman's home improvement business. Mr. Pittman had paid the victim on the morning of July 12, 1997. He stated that the victim had "a little over six hundred [dollars]."

Lieutenant Douglas Swauncy, an investigator for the Memphis Police Department's homicide bureau, testified concerning a statement he had taken from the defendant two days after the killing. In the statement, the defendant admits to shooting and killing a black male on July 12, 1997, in the parking lot at 915 East McLemore. The defendant alleged in his statement that a robbery of the victim was planned by himself and his three co-defendants: Willie Love, Michael McDonald, and Michael Parrish, whom the defendant only knew as "Black" or "Little Ugh." The defendant claimed that Parrish originated the plan after the victim "walked up and showed a lot of money." According to the defendant, Parrish left and returned with a silver .38 revolver with black grips and was handing it to Love when the defendant intervened. In the defendant's words, "I grabbed it and then we attempt to rob the guy. I walked over to the guy, everybody was standing around and so I shot him. Then I looked around, wasn't nobody there so I went in his pocket and got the money[.]" The defendant in his statement alleged he shot the victim five or six times, took $210 from him, and shared it with the co-defendants.

Michael Parrish testified that he was at the scene of the killing in the company of Cornelius Bailey, Michael McDonald, Willie Love, and the defendant. The victim arrived on the scene riding a bicycle and gave Bailey five dollars. Parrish heard a shot and looked up to see the defendant shooting at the victim on his bicycle. The victim dismounted the bicycle, ran a "couple of steps," and fell. Parrish stated that the defendant was still shooting, and Parish heard five or six shots. Parrish claimed that the defendant shot the victim with a .38 revolver that he had sold the defendant the day before the shooting and identified the weapon in open court. Parrish denied receiving any money from the robbery.

Michael McDonald, another co-defendant, testified he was at the scene of the shooting. He claimed that he was shooting dice with Cornelius Bailey on the trunk of a car when the victim arrived on a bicycle. He saw the victim give Bailey $10 or $20, then witnessed the defendant pull a gun from behind his back and shoot the victim. McDonald said the victim fell off the bicycle after being shot, and McDonald turned to go across the street. McDonald looked back and saw the victim "like crawling" with the defendant still shooting the victim. McDonald claimed to have heard the defendant say to the victim before the first shot, "Drop it off. Drop it off." McDonald denied receiving any of the robbery proceeds.

On cross-examination, McDonald admitted to having given differing statements to Lieutenant Swauncy, the homicide investigator. McDonald said that he was told by Swauncy to say that Parrish

had gone after the weapon and given it to the defendant. McDonald said that Swauncy had told him to lie in the first statement, but that his testimony at trial was truthful.

Officer Larry Colburn of the Memphis Police Department crime scene unit, sketched and took photographs of the crime scene. He found $60.37 on the victim's body.

A forensic pathologist, Dr. Wendy Gunther, was the next witness. Dr. Gunther stated that Dr. Tom Deaning had performed the autopsy on the victim but was unavailable on the trial date to testify. Dr. Gunther stated she had familiarized herself with the autopsy and was prepared to interpret the results. Dr. Gunther attributed the cause of death to "multiple gunshot wounds to the chest with injuries of many vital organs and internal bleeding." She observed seven bullet holes caused by five bullets. Of those, one shot hit the victim from the front and the remainder struck the victim in the back. Dr. Gunther stated that the frontal wound pierced a lung and grazed the heart but was not a fatal shot. She opined that, after receiving this shot, the victim could run and move. All but one of the shots to the victim's back were fatal.

Jerome Powell was a bystander who witnessed the shooting. He testified that the defendant looked like the individual he saw shooting on the day of the killing. Powell said he was twenty to twenty-five yards from the shooting scene. He said that he heard the first two shots and saw the last three. Powell stated the victim was walking away, and the defendant shot him twice. Then when the victim fell, the defendant shot him two or three more times. The weapon used was chrome or nickel plated.

This concluded the State's evidence, and the defendant elected to present no proof. After deliberation, the jury returned guilty verdicts on all charges. The convictions for premeditated murder and felony murder were merged into one conviction for first degree murder and submitted to the jury for sentencing. At the conclusion of the penalty phase, the jury returned a verdict of life without parole for the merged conviction of first degree murder. A sentence of twenty years, to be served concurrently with the first degree murder sentence, was imposed by the trial judge on the especially aggravated robbery conviction.

A motion for new trial was filed and overruled. Trial counsel was allowed to withdraw from representation, and no appeal was filed. Subsequently, the defendant filed a post-conviction petition which was dismissed without prejudice, and a delayed appeal was allowed. The defendant presents one issue on appeal; whether the evidence was sufficient to support the convictions.

**Analysis**

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a

combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

In this instance, the defendant was charged in separate counts with premeditated first degree murder and felony murder. After a finding of guilt on both counts, the trial court appropriately merged them into a single conviction for first degree murder. See Carter v. State, 958 S.W.2d 620, 624-25 (Tenn. 1997). Upon merger, the verdict of guilty is sustainable if the proof sustains either felony murder or premeditated murder. See State v. Patrick Wingate, No. M1999-00624-CCA-R3-CD, 2000 Tenn. Crim. App LEXIS 414, *19 (Tenn. Crim. App. at Nashville, May 25, 2000).

First degree murder is defined, in part, as "the premeditated intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). "Premeditation" is described as "an act done after the exercise of reflection and judgment." Id. § 39-13-202(d). To find a defendant guilty of premeditated murder, the jury must determine that "the intent to kill was formed prior to the act itself" and that "the accused was sufficiently free from excitement and passion as to be capable of premeditation." Id. "'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Id. § 39-11-302(a).

Premeditation is a question of fact to be determined by the jury. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). The jury may infer premeditation from the manner and circumstances of the killing. See State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998); State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997). In State v. Nichols, 24 S.W.2d 297, 302 (Tenn. 2000), our supreme court enumerated several factors that may be used to support the existence of premeditation and deliberation,

including: (1) declarations by the defendant of an intent to kill, (2) evidence of procurement of a weapon, (3) the use of a deadly weapon upon an unarmed victim, (4) the particular cruelty of the killing, (5) infliction of multiple wounds, (6) preparation before the killing for concealment of the crime, (7) destruction or secretion of evidence of the murder, and (8) calmness immediately after the killing.

The facts of this case showed that the defendant had armed himself with a deadly weapon and showed no hesitation in shooting the unarmed victim. As the helpless victim attempted to escape the unprovoked attack, the defendant callously continued to shoot the victim in the back. Just as these facts support the finding of premeditated murder, the facts supporting felony murder are equally overwhelming. The defendant admitted, in his own statement, his intent to rob the victim, as well as the use of the weapon to fire the fatal shots. This was confirmed in substantial detail by the co-defendant's accounts and the bystander, Jerome Powell. The testimony of the forensic pathologist concerning the victim's wounds was consistent with the events described by the witnesses. The defendant's admission to taking the victim's money from his body after the shooting was likewise corroborated by witnesses on the scene.

The defendant contends that since he did not rifle the pockets of the victim until after the fatal shots were fired, no robbery was complete prior to the victim's death, therefore, "preventing [the defendant] from being guilty of these offenses [felony murder and especially aggravated robbery]." It is not required that the felony precede the murder in order to support a felony murder conviction, and the killing may precede, coincide with, or follow the felony and still be "in the perpetration" of the felony. State v. Buggs, 995 S.W.2d 102, 106 (Tenn. 1999). We conclude that the killing of the victim occurred "in the perpetration" of the robbery by the defendant.

Especially aggravated robbery consists of theft of property from a person by violence and the use of a deadly weapon where the victim suffers bodily injury. Tenn. Code Ann. § 39-13-403. The record in this case is replete with proof of the defendant's intention to rob the victim, his calculated and cold act of shooting the victim even as the victim lie prostrate and helpless, and culminating in the act of robbing the victim.

From the foregoing and the record as a whole, we conclude that the evidence adduced was more than sufficient to support the convictions. We therefore affirm in all respects.

_____
JOHN EVERETT WILLIAMS, JUDGE

-5-